FRANK RICKARDS and RATIE E. RICKARDS, his wife, *v.* SMITH NAPOLEON GRAY.

The testator had but two children, both daughters, one of whom was married and had one child, the other, younger, and still unmarried ; and by the second item of his will devised several farms and tracts of land, constituting about one-half of his real estate, to the oldest of them, his " daughter Caroline, and her heirs, provided, nevertheless, that if my said daughter Caroline should die, leaving no issue to survive her, then, and in that case, my will and desire is, and I so order and direct, that all the real estate I have given my said daughter Caroline shall go to and become the property of my daughter Ratie, to her, her heirs, subject to the restrictions and limitations hereinafter made and provided."

By the third item of it, he devised also several other farms and tracts of land, constituting the balance of his real estate, to his second " daughter, Ratie, and to her heirs, provided, nevertheless, that if my said daughter, Ratie, should die leaving no issue to survive her, then, and in that case, my will and desire is, and I so order and direct, that all the real estate that I have given my said daughter, Ratie, shall go to and become the property of my daughter Caroline, to her and to her heirs, subject, however, to the restrictions and limitations hereinafter made and provided."

The fourth item of it was as follows : "In case both of my said daughters should die, leaving no issue to survive them, my will and desire is, that my surviving brothers (if any), and the children of my deceased brothers and sisters, shall have all my real estate, to be divided equally between my said brothers who survive me and the children of my said deceased brothers and sisters, the children of a deceased brother or sister to take only a parent's

Rickards and Wife *v.* Gray.

share, to them, their heirs and assigns forever.  My will and desire further is, that if both my said daughters should leave issue to survive them, or either of them, and said issue should die leaving no issue to survive them, or either of them, then my said real estate shall go to my said brothers, and the issue of such of my brothers and sisters who are deceased, as above provided."

*Held,* That, as both of the daughters survived the testator, they each took, on his death, under the foregoing devises in question, an indefeasible and absolute estate, in fee simple, in the lands and tenements therein respectively and primarily devised to them.

THIS was a case stated, with the question of law reserved to be heard before all the judges in the Court of Errors and Appeals, on the construction of the last will and testament of Nehemiah Davis, deceased, which was made a part of the case stated, and which was founded on an action brought by the plaintiff against the defendant upon a written agreement between them by which the said Ratie E. Rickards, late Ratie E. Davis, one of the daughters and devisees of the testator under the will, agreed to sell and convey in fee simple, for a certain stipulated price, to the defendant, a portion of the land therein devised to her, and which he refused to accept on the ground that she could not, under the devise convey an indefeasible estate in fee simple therein to him.

The will was as follows:

IN THE NAME OF GOD AMEN: I Nehemiah Davis of the Town of Milford Kent County and State of Delaware being in my usual health and of sound mind but calling to mind the uncertainty of life and that I may be the better prepared to leave the world when it shall please God to call me away I do hereby make my last will and Testament in manner and form as follows to wit.

*Item.*—My will and desire is that all my just debts and funeral expenses be first paid.

*Item.*—I give devise and bequeath to my daughter Caroline M. Gray wife of Smith Napoleon Gray the following tracts peices or parcels of real estate as it is hereinafter named and described and set forth or intend so to be.  first I give my said daughter Caroline all that certain Tract peice or parcl of land

16

Rickards and Wife *v.* Gray.

known as the "Townsend farm" situate in Slaughter Neck Cedar Creek hundred Sussex County adjoing lands of Lemuel Draper and others now occupied by Henry Clendaniel·containing Two Hundred and Twenty five Acres of land and marsh be the same more or less. Also all that certain tract peice and parcel of land situate in Slaughter Neck Cedar Creek Hundred Sussex County adjoining lands of Riley Bennett, Waples, and others Containing one hundred and sixty six Acres of land and Marsh be the same more or less. Also all that certain Tract, peice, and parcel of land situate in Cedar Creek hundred Sussex County aforesaid and known as the "Shockley Farm" adjoining land of Paswaters Thos Coulter and others containing Two Hundred and forty acres of land be the same more or less. Also that certain Tract peice and parcel of wood situate in Milford Hundred Kent County adjoining lands of Griffith and others and known as the "Townsend land" Containing one hundred and fifty acres of land be the same more or less. Also one-half or moiety of all them certain lots peices and parcels of (tilable and pasture) land known as my "Town lots" situate in the Town of Milford Kent County adjoining land of       and others containing seventeen acres of land be the same more or less (one moiety of which lot I have given to my daughter Ratie) Also all that certain House and lot of land situate on front street in the Town of Milford Kent County adjoining land of H. May dec and others be the contents more or less. Also all that certain Tract peice and parcel of land and Marsh known as "Hickory Point" adjoining the Townsend farm and land I have given my daughter Ratie and others containing Twenty-four acres more or less. Also all that certain tract peice and parcel of wood land known as the "Mifflin land" situate in Milford Hundred adjoining lands of W[m] J. Sapp and others containing one hundred and Three acres of land more or less. Also all that certain Brick house and lot of land situate on front street in the Town of Milford Kent County adjoining lands of H. May dec[d] and others be the contents more or less. Also all them two certain Houses and lots of land situate on West Street in the Town of Milford Kent County adjoining lands of Mrs Latchem be the contents thereof

more or Less.   Also all them two Houses and lots of land situate on North Street in the Town of Milford Kent County aforesaid adjoining lands of G. Davis and others be the contents there of more or less.   The above and foregoing described and mentioned Tracts peices and parcels of Land I give to my said daughter Caroline and to her Heirs Provided Nevertheless that if my said daughter Caroline should die leaveing no issue to survive her then and in that case my will and desire and I so order and direct that all the real estate I have given my said daughter Caroline M shall go to and become the property of my daughter Ratie to her her Heirs subject to the restrictions and limitations hereinafter made and provided.

*Item.*—I give devise and bequeath to my daughter Ratie E. Davis the following tracts peices and parcels of real estate as is hereinafter named described and set forth or intended so to be. first, I give my said daughter Ratie E. the old mansion Farm (that belonged to my Father) situate in Slaughter neck Cedar Creek Hundred Sussex County, adjoining lands of Riley Bennett (land I have given my daughter Caroline) and others containing two Hundred and Sixty five acres of land and marsh be the same more or less.   Also all them certain Tracts peices and parcels of land known as the " Carpenter " land adjoining lands of P. T. Davis Riley Bennett and others situate Slaughter Neck Cedar Creek Sussex County containing one hundred and seventy five acres of land and marsh more or less.   Also all that part of my real estate known as the Robinson tract situate in Cedar Creek Hundred Sussex County adjoining lands of Jefferson, Waples and others containing Two Hundred and Seventy five acres of land more or less.   Also all that certain tract peice or parcel of Marsh situate in Cedar Creek Hundred Sussex County adjoining marsh of Joseph Sheppard and others containing twenty acres more or less.   Also one half or moiety of all them certain lots peices and parcels of (tilable and pasture) land known as my " Town lots " situate in the town of Milford Kent County adjoining lands of            and others containing Seventeen acres of land more or less, one moiety of which I have given to my daughter Caroline    Also all that certain House and to of

Rickards and Wife *v.* Gray.

land whereon I now live situate on Walnut Street in the Town of Milford Kent County Delaware be the contents thereof the same more or less    Also all that certain Frame House and lot of land situate on front street in the Town of Milford Kent County now in the tenure of E. Macklin be the contents more or less.    Also all them them four one story frame Houses and lots of land situate on Pear Street in the Town of Milford Kent County adjoining lands of            and others.    Also all that certain frame granery and lot of land situate in the Town of Milford Kent County adjoining lands of Jno Stewart and

Polk and other be the content thereof the same more or less. The above and foregoing described and mentioned tracts pieces and parcels of land I give to my said daughter Ratie E. Davis and to her Heirs Provided Nevertheless that if my said daughter Ratie E. should die leaveing no issue to survive her then and in that case my will and desire is and I so order and direct that all the real estate I have given my said daughter Ratie E. shall go to and become the property of my daughter Caroline M. to her and her heirs subject however to the restrictions and limitations hereinafter made and provided.

*Item.*—In case both of my said daughters should die leaveing no issue to survive them my will and desire is that my surviveing Brothers (if any) as the children of my deceased Brothers and Sisters shall have all my real estate to be divided equally between my said Brothers who survive me and the children of my said deceased Brothers and Sisters the children of a deceased Brother or Sister to take only a parents share to them their heirs and assigns Forever    My will and desire further is that if both my said daughters should leave issue to survive them or either of them and said issue should die leaveing no issue to survive them or either of them then and in that my said real estate shall go to my said Brothers and the issue and the issue of such of my Brothers and sisters who are deceased as above provided.

*Item.*—All the residue of my Estate both Real and personal I give devise and bequeath to my two daughters Caroline M. Gray and Ratie E. Davis to be equally divided between them share and share alike.

Rickards and Wife *v.* Gray.

*Item.*—I do hereby nominate constitute and appoint my Brother Henry Davis whole and sole executor of this my last will and Testament revokeing and makeing null and void all former wills by me made confirming this and this only as my last will and Testament I Nehemiah Davis have hereunto set my hand and seal the thirtieth day of June in the year of our Lord one Thousand Eight Hundred and Seventy-six 1876.

*N. B. Smithers* for the plaintiffs.

The contest is wholly a question of construction of the will of Nehemiah Davis.

There must be one of two results : (1) That the testator meant that the fee should not vest absolutely in any of his devisees until the death of all his possible grandchildren; or, (2) that the period of such vesting was at his own death, when the devisees should be ascertained and the estate go according to the existence of objects then in being. (1) Every will must be so construed as that all its provisions shall take effect. It is certain, and will be admitted that this cannot be done, if the estates over be held to be executory devises. (2) The policy of the law is against restraints on alienation and in favor of absolute vesting at the earliest period. No gift will be construed as an executory devise, if it can be otherwise read consistently with the language of the testator.

(3) The immediate devisees, being the family of the testator, are always to be regarded as the first and favored objects of his bounty, and every provision is to be interpreted most beneficially to them, so far as the language of the will allows.

(4) In this will it is admitted that the word " *survive,*" used throughout, is equivalent to " *living at the time of the death* " of the several persons with reference to whom it is used.

(5) When the question is between an " *executory devise* " and an " *estate-tail,*" which estate-tail is sought to be created by narrowing words of inheritance, otherwise importing a fee-simple, through the operation of the word " *issue*" or other words marking heirs-special, then the words " *living at the time of the death,*" or like words, are potential to establish the construction of a

" *definite* " instead of an " *indefinite* " failure of issue and thereby to prevent the modification of the general words of limitation.

This rule is too well established to be controverted, though it has often been impugned as destitute of principle. 2 Powell on Devises, 188, note ; 21 Law Library, 109.

In this opinion Mr. Lewis concurs.

(6) But when, as here, the question is merely the discovery of the *time* when the contingency is to happen upon which the subsequent devises are limited to take effect, not as affecting the quantity of interest, but simply determining the period when those devises shall become operative as to devisees then to be ascertained, these words are not controlling. In this inquiry the question is *when* did the testator contemplate the failure of issue to occur. For aught that these words import, it might have been either before his death or afterwards, and the mere fact that such event was prescribed as the contingency upon which the subsequent devise was to become operative does not fix the time when the testator contemplated its occurrence.

(7) In the determination of this question of *time* there is no difference in the rules of construction whether the subject of the devise be realty or personalty. 2 Williams' Executors, 1368, 1369—note a. (8) Though any particular clause or provision of a will may be denied *operation*, as being against the policy of the law, yet, the question being concerning the *intention* of the testator, such clause or provision is to be considered in *construction*, as fully as if it were allowed to operate to the extent of its meaning. Heasman *v.* Pearse, 7 Ch. Appeal (Law Rep.), 282. (9) Though, when the intention of the testator has been clearly established and is in conformity with legal rules, no consideration of hardship or absurdity shall be allowed to prevail against it, yet when the question is to discover what the testator intended all such circumstances as the state of his family—the relation of the objects of his bounty to himself and to others—the nature of the property—the consequences of one or another construction, and generally, the reasonableness or unreasonableness of the bequests, are proper to be considered, as guides to a sensible interpretation. (10) The word " *issue*," used in the will, in connec-

Rickards and Wife *v.* Gray.

tion with the daughters respectively, must necessarily be con-
strued to mean " *children,*" because of the provision, subsequently
occurring, looking to the death of that issue, " *leaving no issue to
survive them or either of them.*" This is conclusive as showing
that by the first word " *issue* " he did not mean issue " *indefi-
nitely,*" but *immediate* descendants of his daughters. It is further
to be observed that in the last clause the word " *issue* " is used
referentially as equivalent to " *children of brothers and sisters.*"
2 Williams' Executors, 1201 (note a).

(11) The scheme of the will, so far as the devisees are con-
cerned, is clearly *substitutionary.* The testator was providing
against the contingencies of death and substituting devisees in
lieu of those to whom portions had previously been given. The
share originally bequeathed to each daughter was given over, in
case she were then dead without leaving a child or issue of such
child then living, to the other, and in case neither of his daugh-
ters, nor any child of either, nor issue of such child, should be
then living, then, *the whole of the real estate* was to go to and be
divided among *his brothers living at the time of testator's death,*
and the *children,* then living, of his brothers and sisters who
were then dead, per stirpes. (12) The words used to effect this
purpose mark both the persons who are to take and the time at
which the final distribution is contemplated, for not only in the
former, but in the latter clause providing for the ultimate con-
tingency, the words distinctly refer to *brothers living at his death,*
and the issue of brothers and sisters dying before the testator.
By the plain words of the will the death of the testator is the
event before which all the contingencies contemplated were to
have happened, and the lands were then to vest absolutely in the
objects, then existing and ascertained. (13) It is clear that *all
the real estate,* upon the happening of the contingency in that
behalf, whensoever it was contemplated to occur, was to go over
in *one block* to his ultimate devisees, *i.e., brothers living at his
death,* and *the children,* then living, of his brothers and sisters,
who had died before him, to be divided among them, per stirpes.
To construe this as a contingency which he meant to happen at
the death of *all his possible grandchildren,* whensoever such death

might happen, involves so many inconveniences and absurdities that it ought not lightly to be adopted.

Some of the consequences which must have been intended by the testator upon the construction necessary to establish an executory devise.

At the time of making the will and at the death of testator, there were, two daughters, *i.e.,* Caroline and Ratie.

(1) Caroline was married and had issue. (2) Ratie was un-married.

The testator mentions five contingencies:

(1) Death of Caroline without leaving issue.

(2) Death of Ratie without issue.

(3) Death of both without issue.

(4) Both leaving issue, and death of the issue without leaving issue.

(5) One leaving issue, and death of that issue without leaving issue.

If the testator were providing for contingencies, to happen *after* his death, then: (1) In the event of the death of Caroline, without issue then living, Ratie would have taken what was equivalent, whether in point of enjoyment or of practical worth, to an estate for her own life, in the lands devised to Caroline, subject to the curtesy of Smith N. Gray (there having been issue of the marriage), and with continual liability of defeasance, if she took the accrued interest subject to the devise over, both as to her original and the accrued share. If the accrued share were not subject to defeasance, but accrued absolutely, only subject to curtesy, then, as to that part, the devise over were defeated, contrary to the subsequent declaration of the testator that his brothers, and the children of deceased brothers and sisters, were to have *all the real estate* upon the happening of the prescribed contingencies. (2) In the event of the death of Ratie, unmarried and without issue then living, Caroline would have taken her share, either absolutely, or, like her original share, affected by liability to defeasance, and subject to the devises over. If the former, the subsequent devises would have thereby become void. If the latter, then, upon her death, either with or without issue

Rickards and Wife *v.* Gray.

then living, Smith N. Gray would have been tenant by the curtesy of the *whole lands* to which the devises over would have been subject, and, in the case of grandchildren, with liability to defeasance during their several lives.   If Ratie died, leaving a husband, it would have been still further complicated by the estate of the husband in a moiety.   (3) In the event of the death of both, without leaving issue then living, then, the brothers and children of deceased brothers and sisters would be postponed during the lives of the husbands, if both married, or at all events, of Smith N. Gray, in Caroline's share, or in the *whole*, if Ratie died first. (4) If both left issue, then the husbands would have been entitled to curtesy in all the lands, and the estate of the grandchildren, according to the assumed intention of the testator, would have been no more, in reality, than estates for their own lives, subject to the life-estates of the husbands, and with continuous liability to defeasance.   (5) In the event of the death of one, leaving issue, the other dying without issue.   Then, if Ratie died first, having had issue, but dying without issue living, and Caroline leaving issue, the husbands would be tenants by the curtesy of the whole lands.   If Ratie never had issue, Gray would be tenant for life of the whole lands, and the issue of Caroline would, in either case, take what was practically estates for life, subject to life-estates by the curtesy, with liability to defeasance by their own deaths without issue.   If Caroline died first, without issue living, then, inasmuch as there had been issue, Gray would be entitled to an estate for his life; the issue of Ratie would take, both in the lands of their mother and in the share of Caroline, that which, during their lives, was equivalent only to a life-estate, not to be enjoyed in the permanency of rents or profits until after the death of the respective tenants by the curtesy, and, in the meantime, subject to defeasance in the whole by their own deaths without issue living.   (6) Let us assume the most favorable state of events possible—the death of the husbands of both daughters, and both having issue.   Then, for the lives of the daughters, in the uncertainty of the death with issue then living, their estates would be comparatively injuriously affected.   Then, both die, leaving issue.   Their several portions

Rickards and Wife *v.* Gray.

descend subject to the same contingencies. If partition be had, the respective shares would still be held liable to defeasance. Should they marry, the allotments of each would be subject to dower and curtesy. Meantime, none of the grandchildren, according to the supposed intention of the testators, take indefeasible estates, and upon their deaths, after the lapse of two generations, the several shares, complicated by the contingencies of half a century at least, must return to be consolidated into one whole, and be divided among the brothers of the testator *living at his death*, and the children of brothers and sisters who had died before him.

Plaintiff's authorities: Mickley's Appeal (Sup. Ct. Pennsylvania), 19 Reporter, 658; Caldwell *v.* Skilton, 1 Harris, 153; Jessup *v.* Smuck, 4 Harris, 327. Distinguished by clear facts, evidencing other intent. Ware *v.* Watson, 7 De G., M. & G, 248; Bowers *v.* Bowers, 8 Eq. Cases (Law Rep.), 281; Same *v.* Same, 5 Ch. Appeal, 243; *In re,* Heathcote's Trusts, 9 Ch. Appeal, 50 (note); V. C. Malin's Strictures, Olivant *v.* Wright, 20 Eq. Cases (Law Rep.), 220; Same *v.* Same, 1 Ch. Division (Law Rep.), 346; Besant *v.* Cox, 6 Ch. Division (Law Rep.), 604.

*Ridgely,* for the defendant, replied that he would decline to argue the case, as he did not dissent from the opinion advanced and contended for by the counsel on the other side, their object and the mutual object of their respective clients being to obtain the true and correct construction of the will in question by the decision of this court, and for which purpose the case stated had been made and brought up here.

The estates which the two daughters and primary devisees of the testator take under it, were not estates in tail, but the limitations and provisions of the entire will, with regard to the numerous tracts of land devised in it to them, would constitute it an executory devise in law, if it were not that the devise over to the brothers of the testator and their children who should survive him, on the death of both of his daughters leaving no issue to survive them, or if leaving issue to survive them, or either of them, and said issue should die leaving no issue, was

made dependent upon a condition too remote for that purpose, as it could not necessarily occur, or the estate limited upon it vest in them within a life or lives then in being, and twenty-one years afterwards.

*Saulsbury,* Chancellor.   It appears from the case stated for the consideration of this court, and from the will of Nehemiah Davis, deceased, which is made a part of the case stated, that the testator had, at the time of the making of his will and of his death, two daughters, Caroline M. Gray, wife of Smith Napoleon Gray, and Ratie E. Davis, who, subsequently to the testator's death, intermarried with Frank Rickards, and that the said Caroline M. and Ratie E. were the sole heirs at law of the said testator.   Caroline had one child at the death of her father.   The testator was seized and possessed at the time of his death of a large real and personal estate, a portion of which he devised to the said Caroline M. and her heirs, " provided, never-theless, that if the said Caroline should die leaving no issue to survive her, then and in that case " he directed that all the real estate he had given to his said daughter, should go to and be-come the property of his daughter Ratie and her heirs, subject to the restrictions and limitations in his said will thereinafter made and provided.   The remaining portion of his real estate he devised, describing it, to his daughter Ratie E. and her heirs, with a similar provision, that if she should die leaving no issue to survive her, then, and in that case, all the real estate he had given her should go to and become the property of his daughter Caroline M. and her heirs, subject to the like restrictions and limitations.

The limitations and restrictions intended by the testator are contained in the *fourth item* of his will, and are as follows: " In case both of my said daughters should die leaving no issue to survive them, my will and desire is that my surviving brothers (if any), as the children of my deceased brothers and sisters shall have all of my real estate, to be divided equally between my said brothers who survive me, and the children of my said deceased brothers and sisters, the children of a deceased brother or sister

to take only a parent's share to them, their heirs and assigns forever. My will and desire further is, that if both of my said daughters shall leave issue to survive them, or either of them, and said issue should die leaving no issue to survive them, or either of them, then, and in that case, my said real estate shall go to my said brothers (that is, the brothers who should survive the testator) and the issue of such of my brothers and sisters who are deceased as above provided."

The question presented for our consideration is, what estate did the said Ratie and the said Caroline M. take under the will of their father in his real estate. We have not been aided in considering the case stated, presented to us by an argument except that favorable to the hypothesis giving to the daughters an absolute interest in the property devised to them and vesting in them in possession upon the death of the testator. We are therefore compelled to subject that hypothesis to the closest scrutiny, unaided by opposing counsel. Both counsels agree as to the meaning of the testator. Such agreement, in our opinion, however, will not, of itself, justify us in entering judgment conformable thereto, nor unless we shall be convinced that the hypothesis is in itself correct.

Upon reading the will of the testator, with a view to the proper determination of the question submitted to us, I was very forcibly impressed by the remark of Lord Justice Knight Bruce, in the case of Key *v.* Key, 4 De. G. M. & G., 73 & 84. He said : " In common with all men I must acknowledge that there are many cases upon the construction of documents in which the spirit is strong enough to overcome the letter ; cases in which it is impossible for a reasonable being upon a careful perusal of an instrument, not to be satisfied from its contents that a literal, a strict, or an ordinary interpretation given to particular passages, would disappoint and defeat the intention with which the instrument read as a whole persuades and convinces him that it was framed. A man who is so convinced is authorized and bound to construe the writing accordingly." Before I proceed to examine more particularly the provisions of Mr. Davis' will, I will state some general principles governing the

Rickards and Wife *v*. Gray.

interpretation of wills, which may assist in ascertaining what in law must be considered a proper construction of those provisions ; and, first, if the gift is followed by words of limitation or benefit, as to A, his heirs and assigns, or to A forever, or to A for his own use and benefit, and the property is then given over upon contingencies, one or other of which must happen, as, for instance, upon death either with or without children, the defeasibility will be limited by the period of distribution, whether it is the testator's death or some other time, in order not to cut down the previous absolute interest to life estates merely. Doe *v*. Sparrow, 13 East, 395; Clayton *v*. Lowe, 5 B. & Ald., 636 ; Gee *v*. Co-operation of Manchester, 17th Q. B., 737 ; Woodburne *v*. Woodburne, 23 L. J. Ch., 336 ; Da Costa *v*. Keir, 3 Russell, 360; Slaney *v*. Slaney, 33 Bevan, 631.

If, however, the gift is merely in general words, without any expressed indication that it is intended to be absolute, the fact that the contingencies upon which the property is given over in effect reduce the interest to a life interest, will not have the effect of confining the happening of the contingencies to the period of distribution. Cooper *v*. Cooper, 1 K. & J., 658 ; Bowers *v*. Bowers, 8 Eq., 283, 5 Ch., 244.

It is not, however, necessary, in order to limit the defeasibility, that the gifts over should be upon contingencies, one or other of which must occur so as to cut down the prior interest to a life estate, unless the defeasibility is limited.

In Clayton *v*. Lowe, Gee *v*. Mayor of Manchester and Woodburne *v*. Woodburne, the interest of the surviving legatee would not necessarily have been reduced to a life estate, and if it is once clear that the legatee is to take any absolute interest, a gift over in one event is as inconsistent with that absolute interest as a gift in several, one of which must occur.

And, accordingly, where the intention to give indefeasible interest at a particular time is clear, the gift over upon a single contingency as upon death without issue, will be limited to death without issue before that time. Brotherton *v*. Bury, 18 Bevan, 65 ; Ware *v*. Watson, 7 D. M. & G., 248, Re Austice, 23d Bevan, 135 ; Clarke *v*. Henry, 11 Eq., 222, 6 Ch., 588. The

Rickards and Wife *v.* Gray.

gift over upon death without issue cannot be restricted to the time of vesting where there is an express gift over upon death merely before the time of vesting. Martineau *v.* Rodgers, 8 D. M. & G., 328. If there is a devise to A simply, or to A for life, followed by a gift over in default of issue, if these words import an indefinite failure of issue, A takes an estate tail; but if these words do not import an indefinite failure of issue, but the death of a particular issue, A will not take an estate tail. These principles may be found stated in Theobold on Wills, and are illustrated by these and other cases.

No general rule can be laid down to determine when a gift over of a share of the legatee dying without issue is substitutional and where not; but if the gift over on the death of the legatee without issue be of the share intended for such legatee, it is clear that the gift over is by way of substitution only. Hawkins on Wills, 258.

Where real or personal estate is given with words of limitation implying the absolute ownership, but there follow alternative gifts over in the event of the first taker dying with and without issue or children, which exhausts all contingencies, so that if unrestricted in point of time their combined effect is to reduce the interest of the first taker to a life estate only, a ground is presented for restricting the gifts over to the period of distribution, in order to avoid an inconsistency with a prior absolute gift. Hawkins on Wills, 258.

In the latest case having relation to the questions proper to be considered in respect to the construction of Mr. Davis' will, the case in Re Hayward, Creery *v.* Lingwood, reported in part 4, April 1, 470, vol. xix., p. 311 to p. 319, Law Reports, Chancery Division, where a testator bequeathed his residuary personalty to trustees for the children of L., to be divided equally between them, and directed that, " in case of the decease of either of them having a family, then such share as the parents would have taken shall be equally divided among the children of such deceased parents," it was held that decease meant decease during the testator's life, that the children of L. who survived the testator took absolutely, and that the children of

Rickards and Wife *v.* Gray.

one child of L., who died between the date of the will and the death of the testator, took the share which the parent would have taken.   In deciding this case, most, if not all, the English cases upon the subject, on the brief presented to us in this case and many others besides, were commented upon or referred to. Fry. J., in delivering the opinion of the Court, said : " there is, in my judgment, no doubt that when a gift is made to a person in terms absolute, and that is followed by a gift over in the event of the death of that person, *sub modo,* that is to say, without issue or subject to any other limitation which makes the death a contingency, the effect of the gift over is *prima facie* to prevent the first taker from taking absolutely, to convert the interest of the first taker into one subject to the contingent devise or bequest over.   In such a case there is no reason to confine the meaning of the word death to death during the life-time of the testator, or death during the life of the tenant for life.

The only reason, or the main reason, why that is done in certain cases is that the testator has spoken of death which is certain as a contingency, but when the testator has spoken of death *sub modo,* that being contingent, there is no need to render it contingent by introducing limitation, and he decided that the words, " in case the decease of either of them leaving a family, then such share as the parent would have taken shall be equally divided amongst the children of such deceased parents " pointed to a gift to take effect in the event of the parent dying before the time of taking, that is to say, before the death of the testator, and that the children of Mrs. Edward Lingwood, in trust, for whom the property mentioned in his will was given, took, under the will, an absolute title upon the death of the testator ; and that if any child of her's, who could have taken if he or she had been alive at the death of the testator, died leaving children, such children would be entitled to take the share which the parent would have taken ; in other words, that the nine children of Mrs. Lingwood, living at the time of the testator's death, and the children of the one who had died between the date of the will and the death of the testator, were entitled to take absolutely under the will.

Rickards and Wife *v.* Gray.

The paramount object in the construction of a will is to discover the real intention of the testator so as to carry that intention into effect. Where the intention is plainly manifest in the will it must necessarily govern the construction, whatever may be the result; but where an instrument of writing as a will is susceptible of two or more interpretations, one of which would result in giving effect to all the provisions of the will, and thus make the whole scheme of the will harmonious and consistent without leading to any unreasonable or absurd conclusions, and a contrary construction would leave portions of the will inoperative, or result in such unreasonable or absurd conclusions that construction should be given to it which would maintain all its provisions and thus render the instrument harmonious, or as nearly so as possible, in all respects.

There is scarcely any word, or combination of words, which a testator may use in declaring his intention in respect to the testamentary disposition of his estate that have not, at some time during the long period in which wills have been subjected to judicial construction, received a fixed and certain interpretation. Uniform exposition of words, and combination of words, has resulted in fixed and certain rules of construction, which courts have found it necessary to observe, in order that there may be uniformity of decision as the basis for the security of titles. If a testator, in his will, employs such words, or combination of words, to express his meaning, whatever it may in fact be, and there is nothing otherwise expressed indicating that he so uses them in a sense different from their uniformly adjudged interpretation, they will not be permitted to have any other meaning or effect.

Particular cases will not be exempted from the operation of general rules, merely because it may be possible that a testator in the particular case may have meant differently from that which the words employed necessarily imply in the light of judicial determinations. Conjecture can be no safe guide to wise judicial decision. If in some particular case, by the adherence by judicial tribunals to well-known rules of construction, the actual intention of a testator may fail in effect, the evil would be far less than

Rickards and Wife *v.* Gray.

would be the case, should rules of interpretation be uncertain in meaning or not of uniform application.

Now, upon a cursory reading of the will of Mr. Davis, the ideas of estates tail, contingent remainders and executory devises immediately suggest themselves.

The will requires a careful perusal in order to give to it, as a whole, its proper construction. Separate passages of it, considered alone and unconnected with other passages and without reference to the scheme and purpose of the will as an entirety, might lead to varied and conflicting opinions, but when considered as parts of one entire instrument, each so considered, not only to harmonize with the other, but also as to make the whole congruous and harmonious, first impressions in respect to the parts may prove to be erroneous and untenable.

It appears, from the case stated, that the testator had, at the time of making his will, only two children, his said daughters, one of whom was married having one child, and the other unmarried. These daughters were the sole immediate objects of his bounty. He naturally, and as his will manifests, desired that these two daughters should possess and enjoy his whole estate. He divides it between them and their heirs, giving to each separate portions, and the largest interest which he could give them respectively therein, for the devise to each is in fee simple. The testator, however, provided that if his daughter, Caroline, should die, leaving no issue to survive her, that all the real estate he had given to her should go to and become the property of his other daughter, Ratie, and her heirs, and a similar proviso was annexed to the devise to Ratie, viz. : That if she should die, leaving no issue to survive her, that the real estate devised to her should go to and become the property of her sister, Caroline.

Each of these devises to his daughters was, however, made subject to the restrictions and limitations mentioned in the *fourth item* of his will. The testator did not intend to die intestate as to any portion of his estate. If either of his daughters should die, leaving no issue to survive her, he provided, as was natural, that the other daughter should take the share of the deceased

one; but then it might so happen that both his daughters, although one of them at the time had issue, one child, and the other was unmarried, might die leaving no issue to survive them. He determined to provide against this contingency, and therefore, in case it should happen, he declared his *whole* estate should be divided between his brothers who might survive him, and the children of his deceased brothers and sisters. This division, from the terms he used, he seemed to contemplate as occurring possibly at the period of his own death, for it was to be made between his brothers who should survive him, and the children of his deceased brothers and sisters. There was also another contingency that the testator thought might possibly happen, and that was in case his daughters should leave issue to survive them, or either of them, and said issue should die leaving no issue to survive them or either of them. He provided also against this contingency by directing that, should it occur, all his real estate should go to his said brothers, that is, the brothers who should survive him, and the issue of his deceased brothers and sisters.

While there is nothing unreasonable that the other preceding contingencies contemplated by the testator in his will were such as he thought might occur while his then brothers should continue to live, and not only continue to live, but who, in fact, should be living at the time of his own death, and if so that the ultimate contingent distribution of his real estate contemplated by him in providing against them was to be the period of his own death, it would seem unreasonable that he should have thought this last contingency should so occur. And upon the theory that the devises over to his daughters of the shares of each respectively, and to their issues, and to his brothers and nephews and nieces respectively, are executory devises successively the incorporation of such a provision in the will, can only be accounted for by considering that its draftsman employed language and used terms, the meaning and effect of which he was wholly ignorant. This presents no inconsiderable difficulty in arriving at absolute certainty as to the testator's meaning.

Difficulties present themselves in arriving at a just determina-

Rickards and Wife *v.* Gray.

tion of Mr. Davis' meaning upon any hypothesis that may be adopted in respect to his will.   To say that he intended that his daughters should not take a fee absolute in their respective portions of his estate, upon the happening of his death, would be to cut down the devises to them in fee, as at first given them, notwithstanding they were the primary and more immediate objects of his bounty, to a life estate, and thus render their devises of far less value to them, or at most to give them only fees defeasible therein when some of the other limitations in his will subsequently thereto, might be wholly unavailing, as being incapable of becoming operative by reason of being too remote to take effect by way of executory devise.   Such would be the effect as to the devises over to his brothers and his nephew and nieces upon the happening of the contingencies upon which the devises to them were limited.   The will of Mr. Davis was drawn by an unskilful hand.   It is one upon which even legal minds may differ as to construction.   The best mode of arriving at its true meaning is to analyze it, or separate its parts, and thus ascertain the meaning of its several clauses in their detached and separate conditions, and then by recombining those parts to ascertain whether, in their combined state and as a whole, a meaning can be given to them, so as to preserve in their combination the full meaning of each when separate from the others. Let us consider the devise to Caroline.   It is contained in the second item of the will, the first clause of it being: "I give, devise and bequeath to my daughter, Caroline M. Gray, the following tracts (naming them), the above and foregoing described and mentioned tracts, pieces and parcels of land I give to my said daughter Caroline and to her heirs."   Now had this devise stopped here there could be no doubt that Caroline would have taken a fee-simple in all the lands devised to her; but the testator immediately adds a proviso, as follows: "Provided, nevertheless, that if my said daughter Caroline should die, leaving no issue to survive her, then, and in that case, my will and desire, and I do so order and direct, that all the real estate I have given my said daughter Caroline M. shall go to and become the property of my daughter Ratie, to her, her heirs."   Now had the

Rickards and Wife *v.* Gray.

devise stopped here, there can be no doubt that Caroline, instead of taking a fee absolute in the real estate devised to her, would have taken a fee defeasible, and that Ratie would have become entitled to the part devised to Caroline, or to an estate or interest therein, by way of executory devise, which would have become an estate in possession in Ratie, upon the death of Caroline without leaving issue to survive her. But this devise to Ratie was made subject by the testator to the restrictions and limitations mentioned by the testator in his will, and as hereinbefore stated.

As before observed, the devise to Caroline was in fee absolute. It cannot be considered a devise in tail, by reason of the use of the word issue, because it is not of an indefinite failure of issue the testator speaks, but of issue surviving her, and the word issue as thus used must be construed in the sense of child or children. The same remarks are applicable to the devise to Ratie in the third item of the will. It is obvious that the testator meant that each of his daughters should possess the same estate and interest. Again it may be remarked that the words " subject to the restrictions and limitations herein made and provided," used by the testator in the concluding part of the second item of the will, applies, not to the devise to Caroline and her heirs, but to the devise to Ratie of Caroline's share upon Caroline's dying without leaving issue to survive her. The same remark is applicable to the devise to Ratie in the third item of the will, and to the devise to Caroline of Ratie's share upon Ratie's dying without leaving issue to survive her.

The last clause of the fourth item of the will, which declares that if both his said daughters should leave issue to survive them, and said issue should die leaving no issue to survive them, then, and in that case, his real estate should go to his said brothers, and the issue of such of his brothers and sisters who were deceased would in any event be inoperative and nugatory, as being too remote by way of executory devise. We may now see what Fry, J., meant in his opinion, hereinbefore cited, when he said that in his judgment when a gift is made to a person in terms absolute, and that is followed by a gift over in the event

Rickards and Wife *v.* Gray.

of the death of that person, sub modo (that is to say without issue or subject to any other limitation which makes the death a contingency), the effect of the gift over is *prima facie* to prevent the first taker from taking absolutely, to convert the interest of the first taker into one subject to the contingent devise or bequests over. Such effect is only *prima facie,* and is subject to be overcome by other provisions of the will, inconsistent therewith, or by being attended by circumstances and followed by results which render such a construction not only unreasonable but absolutely absurd, as in the present case.

This will does not say in terms that in case either of the daughters died, leaving issue, that such issue should take the deceased parent's share, nor that if the issue of such issue should die leaving issue, such issue should take the same share as that possessed by their respective parents, but the implication to that effect is as strong as the expression would be and would have the same effect. Now we have seen that the first part of these several devises to his daughters would give to each of them a fee simple, and that the provision, in case either of the daughters die without leaving issue to survive her, is inconsistent with the daughters taking an estate tail in their respective shares on the idea that the testator meant an indefinite failure of issue of his daughters, and that the limitations over could not take effect by way of executory devise because they would be too remote, Some other mode must, therefore, be discovered of interpreting this will, by which all of its provisions may be made to harmonize, and such a construction given to it as will be free from absurdity, and render it consistent in all its parts. If the daughters, respectively, should die leaving issue surviving, and such issue was intended to take, what was it intended they should take? The mere corpus which had been devised to their mothers, respectively, or the corpus and the estates therein to the same extent as had been devised to their mothers? Doubtless the latter. If such issue of the daughters should die leaving issue, would not, in this view of the will, such issue take the same estates as their parents' absolute unqualified fees, or would their interest be restricted to the possession of the mere corpus of the

Rickards and Wife *v.* Gray.

property, or if not be subject to the restrictions and limitations mentioned in the will? The same inquiry is applicable to the issue of such issue dying leaving issue.

It is only in the event of the grandchildren of the daughters, or the great-grandchildren of the testator, dying without leaving issue to survive them, that the devise to the brothers, who should survive the testator, and the children of his deceased brothers and sisters can take any benefit under his will if all these devises are to be regarded as executory and not as substitutionary. Now what would become of the testator's estate should he have great-grandchildren, and those great-grandchildren should die, leaving issue to survive them? This contingency is not provided for by the will, but the question may be answered in one of two ways, and first, it may be, and it is reasonable to suppose, that such an event happening, the great-great-grandchildren would take an estate in fee by implication free from any of the restrictions and limitations annexed to any of the preceding devises, for if an interest in the lands would pass to his great-great-grandchildren by reason of their surviving their parents, the restrictions and limitations imposed by the will extending no farther than in case the grandchildren of the testator should die, leaving no issue to survive them, and the great-great-grandchildren taking the estate by implication, it follows that they would take a fee therein without any such restrictions or limitations. If this be so, and such was the design of the testator, he would seem to have been more solicitous in respect to the interest of his great-great-grandchildren than to those, not only of his great-grandchildren and grandchildren, but than to those even of his own children. Second, if the great-great-grandchildren could not take, by implication, not being mentioned in the will, they would take the estate of the testator as heirs at law of their own parents, the grandchildren of the testator, who dying, leaving children to survive them, and not without leaving children to survive them, their defeasible fee in the lands thereby became absolute and transmissible to their heirs. If they could not take either by implication in the will, nor as heirs at law of their own parents, as aforesaid, it

must follow, of course, that the testator, who appeared so anxious to dispose of his whole estate, and every interest therein, in fact, died intestate as to the ultimate fee, after the death of his great-grandchildren, leaving no issue to survive them at the time of their deaths. If the great-great-grandchildren of the testator would, in the event supposed, in any manner, take a fee simple in his estate, then the devise over to his brothers, who might be living at the time of his death, and to the children of his deceased brothers and sisters could never, under any circumstances, take effect.

Such a construction should give us pause. Some of these devises over would be void, as we have seen, being too remote, and all of them so unreasonable as not to be regarded favorably in the absence of imperatively controlling circumstances. I take this to be well-adjudged law, that if real estate be devised to one and his heirs, with a gift over upon the death of the first devisee, leaving children to his children, and a gift over upon the death of the first devisee not leaving children to another, the devises over will be restrained to the death of the first devisee before his estate falls into the possession, whether the devise be immediate or in remainder.

Is there any construction that can be given to the will of Mr. Davis, by which all its provisions can be rendered harmonious and consistent? There is one, and only one, and that is, that the will must be so construed as that all the contingencies mentioned in it must be considered as intended to happen in the contemplation of the testator before the time of his own death, the devises in the will over being considered substitutional and not executory. Such a construction may be very properly given to it, and would be justified by the principles and authorities before referred to, and particularly by the decisions in the cases of Clayton *v.* Lowe, and Gee *v.* Mayor, of Manchester.

In the former case, William Clayton, among other things, devised that all and every part of his real and personal estate should be equally divided between his grandsons, William Clayton and David Shaw Clayton, and his granddaughter, Elizabeth Clayton, share and share alike forever ; and that if either of his

said grandsons, or his said granddaughter, should happen to die without child or children lawfully begotten, he then ordered and directed that such part or share of both his real and personal estate, whatsoever of the one so dying, should be equally divided among the surviving brothers or sisters, share and share alike ; but, if it happened that any of his aforesaid grandchildren should die, and leave child or children lawfully begotten, that such child or children should have their father's or mother's share of all his estate and effects, whatsoever, equally divided among them.

The court held, that under this devise the grandchildren took an estate in fee simple as tenants in common. It appears by the case of Gee *v.* The Mayor, Aldermen and Burgesses, of Manchester, before referred to, that a testator devised his real and personal estate to be divided equally among his children in manner following, viz : " I will and bequeath to my eldest son A, one-seventh share of my property to his heirs, executors and administrators." Then follow devises and bequests in the same words to each of the testator's other children, thus, as follows : "And in case any of my sons or daughters die without issue, that their share returns to my sons and daughters equally among them ; and in case any of my sons and daughters die, and leaving issue, that they take their deceased parent's share, share and share alike."

All the seven children survived the testator. The court held that dying must be construed to mean die in the lifetime of the testator, and, consequently, that each of the children took a fee simple in one-seventh of the reality and the absolute interest in one-seventh of the personality.

The reasoning of the court, in the case of McGee *v.* The Mayor, etc., of Manchester, may very properly be applied to the present case. In delivering the opinion of the court, Lord Campbell, Ch. J., said, " It is material to consider whether the devise to the testator's son and daughter can operate, so as to give effect to all the words he has used, without rejecting anything contained in the devise, or introducing anything which it does not contain ; for there can be no rejection or introduction if all the

Rickards and Wife *v.* Gray.

words as they stand can operate, but if all the words as they stand cannot operate, the court must introduce or reject as may best answer what may appear to them to have been the testator's intention." Now the only mode of giving effect to all the devises in Mr. Davis' will, is by treating all of them after the original devises to his daughters, only in case of a lapse, and referring the period of distribution or division contemplated to the time of the testator's death. It is an established rule that where a bequest is simply to A, " and in case of his death," or " if he die," to B., A surviving the testator takes absolutely. The time of dying is referred of necessity to the life-time of the testator; otherwise, as they must die at some time, the bequest would be cut down to an interest for his life. The last clause of the will reviewed in the case of Gee *v.* The Mayor, Alderman, etc., of Manchester, was, "and in case any of my sons or daughters die without issue that their share returns to my sons and daughters equally amongst them; and in case any of my sons and daughters die and leaving issue, that they take their deceased parent's share, share and share alike." Lord Campbell said, " We are of opinion we must construe the last clause in this will as referring to the death of the devisees in the lifetime of the testator in order to give effect to all the words of his will, and to reject nothing. In so doing we are not adding to his will, or introducing new words into it, but only construing the words which the testator has used himself; these words as they stand, are capable of being referred to death in his lifetime, or to death generally at any time." The present case seems to be within the principle of the same rule as applied by Lord Campbell, for the dying of the daughters with or without issue, living at the time of their deaths respectively, is as certain and inevitable an event as their dying simply, and all the devises subsequent to the original devise in fee to them are by the terms of the will made contingent upon the fact of their dying with or without issue to survive them.

I do not consider it necessary to review the cases cited in the argument upon this case stated. There is nothing in them, in my opinion, which conflicts with the conclusion to which I have

arrived, but much confirmatory of it. Although I do not mean to say that this case is, in all respects, entirely free from doubt, and that it is one in respect to which there may not be an honest difference of opinion, even among members of the profession, yet for the reasons I have stated, and upon the authorities and principles I have cited, I am of the opinion that the daughters of the testator, having survived their father, took, upon his death, an estate in fee simple in the lands respectively devised to them, and that the said Ratie E. was capable to convey an indefeasible estate in fee simple in the said lot of ground in said articles of agreement mentioned.

*Houston,* J. The will was made on the 30th day of June, 1876, and the testator died in about two years thereafter. At the date of it he had two children, both daughters, the eldest of them recently married and the other still single. He also had three brothers then living, and several brothers and sisters then dead leaving children then living.

By the second item of his will he devises to his eldest daughter, Caroline M. Gray, wife of Smith Napoleon Gray, a considerable real estate, consisting of several farms, tracts of lands, tenements and appurtenances mentioned in it, which he concludes in the following words: " The above and foregoing described and mentioned tracts, pieces and parcels of land I give to my daughter Caroline and to her heirs, provided nevertheless, that if my said daughter Caroline should die leaving no 'issue to survive her, then and in that case my will and desire is, and I so order and direct that all the real estate I have given my said daughter Caroline M. shall go to and become the property of my daughter Ratie, her and her heirs subject to the restrictions and limitations hereafter made and provided."

By the next item of his will he also devises to his second daughter Ratie a like considerable real estate consisting of other farms, tracts of land, tenements and premises mentioned in it, which he also concludes in similar words, as follows: " The above and foregoing described and mentioned tracts, pieces and parcels of land I give to my said daughter, Ratie E. Davis and

to her heirs, provided nevertheless that if my said daughter
Ratie E. should die leaving no issue to survive her, then and in
that case my will and desire is, and I so order and direct that
all the real estate I have given my said daughter, Ratie E. shall
go to and become the property of my daughter Caroline M., to
her and her heirs subject however to the restrictions and limita-
tions hereinafter made and provided."

The next item of the will is as follows: "In case both of my
said daughters should die leaving no issue to survive them, my will
and desire is that my surviving brothers (if any) and the chil-
dren of my deceased brothers and sisters shall have all my real
estate to be divided equally between my said brothers who sur-
vive me and the children of my said deceased brothers and sis-
ters, the children of a deceased brother or sister to take only a
parent's share, to them, their heirs and assigns forever.  My
will and desire further is that if both of my said daughters
should leave issue to survive them or either of them, and said
issue should die leaving no issue to survive them or either of
them, then and in that case my said real estate shall go to my
said brothers and the issue of such of my brothers and sisters
who are deceased as above provided."

It is manifest on the face of the will that the two daughters
of the testator were the first and principal object of his bounty,
and that he had nothing to devise in it to his brothers, nephews,
or nieces in case both or either of his daughters survived him,
or should die in his life-time leaving issue to survive both them
and him.   The first devise of the lands and tenements named in
the will is to the daughter, Mrs. Caroline M. Gray, in direct and
immediate fee simple with an executory limitation over of them,
"if she should die leaving no issue to survive her," to his
daughter, Miss Ratie E. Davis and her heirs, subject to the restric-
tions and limitations provided in the fourth item of the will;
and the second devise of the lands and tenements named in it to
the daughter, Ratie E., is likewise in direct and immediate fee
simple with an executory limitation of them over to her sister,
Mrs. Caroline M. Gray, "if she should die leaving no issue to

Rickards and Wife *v.* Gray.

survive her," to her and her heirs, subject to the same restrictions and limitations provided in the fourth item as before mentioned.

It requires no authority to show that the word "issue" in the connections in which it is employed in these two items of the will, and also in the fourth item of it, does not import a general failure of issue, or a failure of issue at any time on the part of the daughters respectively, but on the death of both of them without leaving any issue of either of them living at the time of their decease, and that it therefore did not convert the fee on which it was limited in either case to a fee tail, but they constituted purely contingent limitations of the property good by way of executory devise, but which could not vest in any issue which either of them might have, until the death of the mother leaving such issue to survive her.

But according to my understanding of the intention of the testator, as expressed in the will, and particularly in the language of the fourth item of it, these executory limitations engrafted on these estates in fee first devised to his daughters respectively, are rendered still more contingent in their character by it. It is as follows: "In case both of my said daughters should die leaving no issue to survive them, my will and desire is that my surviving brothers (if any) and the children of my deceased brothers and sisters shall have all my real estate to be divided equally between my said brothers who survive me, and the children of my said deceased brothers and sisters, the children of a deceased brother and sister to take only a parent's share, to them, their heirs and assigns forever." Now, does not this language necessarily import and require that if the brothers, or the children of the deceased brothers and sisters referred to in this item, should survive both of the daughters leaving no issue to survive them, and also the testator himself, in order to succeed to this devise over to them pursuant to the terms of it? The meaning of it to my mind is quite clear, that the testator intended by it, in case both of his daughters should die leaving no issue to survive them, that such of his brothers as were then living when the will was made, as might survive him, as well as them without leaving issue, and the children of his deceased

Rickards and Wife *v.* Gray.

brothers and sisters should, immediately on his death, have all
his real estate to be equally divided between his said brothers
who survived him and the children of his deceased brothers and
sisters, the children of a deceased brother or sister to take only
a parent's share, to them, their heirs and assigns forever.    And
such being, as I think, the clear meaning and import of the first
clause in the fourth item of the will, it amounts in effect to the
same as if the testator had expressly declared in that clause of
his will, that in case both of his said daughters should die in
his lifetime, or before his own decease, leaving no issue to sur-
vive them, his will and desire was that his surviving brothers
(if any) and the children of his deceased brothers and sisters
should have all his real estate to be divided equally between
his said brothers who survived him and the children of his said
deceased brothers and sisters, as before recited.    In the contin-
gency provided for in this item of the will, not only both of his
daughters, but the testator himself would also have died leaving
no issue to survive him, and in which event the devisees referred
to in it would have been his nearest surviving kin and heirs at
law.    And it so happens, as we are informed, that the three
brothers and all the children of deceased brothers and sisters
who were living when the will was made, were also living when
the testator died.

I do not deem it necessary to advert to the other and succeed-
ing clause in the fourth item of the will, further than to remark
that it does not, in my opinion, vary or modify the preceding
clause as to the particular meaning and effect which I have as-
cribed to it, but means substantially the same, as I understand
it, with the additional executory limitation, that if both of his
said daughters should leave issue to survive them, or either of
them, and said issue should die leaving no issue to survive them,
or either of them, then and in that case his real estate should go
to his said brothers and the issue of his brothers and sisters who
were deceased as above provided ; and to add, that as a further
executory limitation of the State in that contingency, it is void,
and can have no effect as a devise in the will, because the con-
tingency on which it is limited over in this instance to his said

brothers and the issue of his brothers and sisters who were deceased as aforesaid, that is to say, on the failure of the issue, which both or either of his said daughters might leave to survive her, was too remote to warrant it in law. I would further remark before closing what I have to say as to the intention of the testator apparent upon the face of the will, that the devise to his "brothers who survive me," to quote his language, "and the children of his said deceased brothers and sisters," the latter to take *per stirpes* and to be equally divided between them in absolute fee, was, by way of substitution, for the estates previously devised to his daughters in the premises in case they should both die leaving no issue to survive them, and as he here, in express terms, gives all his real estate in that case to his brothers who survive him and to the children of his deceased brothers and sisters, the language naturally imports in the absence of any other time designated in the will, that the surviving brothers and the children of his deceased brothers and sisters should in that case take the whole of it in absolute fee immediately on his decease. And yet, how could this have been done, or could this have been contemplated or designed by the testator, without at the same time contemplating that both of his daughters must die without leaving any issue to survive them in his own lifetime or before his own decease? I therefore think there is sufficient apparent on the face of the will itself, and in the peculiar wording of the first clause in the fourth item of it, independent of any authorities which have been cited, or the rules of law which have been referred to in the argument, to satisfy us that such must have been the design and intention of the testator in regard to this provision and devise in his will. And as the intention of the testator when it can be ascertained with reasonable certainty from the language of the will itself, and does not contravene any legal rule of interpretation in such cases, constitutes our cardinal guide in the construction of it, I might here rest the matter, perhaps, so far as my opinion is concerned in relation to it. But as a question of judicial construction purely of this clause of the will, the view I have taken of it is sustained by the ruling of the Supreme Court of Pennsylvania in the case

Rickards and Wife *v.* Gray.

cited of Caldwell *v.* Skilton, 1 Harris, 152, in which the principle of law governing it is well defined and stated by Bell, J. In that case the testator devised all his real estate to his wife for life or widowhood, and at her decease or marriage, the estate to descend to and be enjoyed by his children, and their heirs and assigns forever, to have and to hold, share and share alike, as tenants in common; and in case of the death of either of the said children, his or her share to descend to the children of the said child, or if said child should die without issue born alive, then the said share to be divided among and be enjoyed by the surviving children, their heirs and assigns forever, share and share alike, as tenants in common.    The wife died during the life of the testator.    The children all survived him.    Held that each of the children, on the death of the testator, took an indefeasible estate in fee simple under the will.    That by the clause, " in case of the death of either of said children," " or said child should die without issue born alive," the testator did not mean death generally or whenever it might happen, but that he meant (his wife having died in his lifetime) that the fee should vest absolutely on his death, and that it was not defeasible throughout the entire life of the children, which was the question submitted in the case stated for the decision of the court on the construction of the will.

*Bell*, J., in delivering the opinion of the court, said: " I am satisfied, from the reasoning submitted on the part of the plaintiff below, and upon the authority of all the cases, that by the phrase, ' in case of the death of either of my children,' the testator did not mean death generally, or whenever it might happen, but in the contingent sense of death occurring within a particular time, in which case the devise over was to take effect, by way of substitution, and not as a limitation engrafted on and qualifying the fee given to the children.    It is very obvious it was not intended to cut down the absolute fee given to them, in every event, and yet such must be the result if the testator meant the indefinite death of any of his children, contended for by the defendant as marking the period of transmission.

Rickards and Wife *v.* Gray.

Under that reading, if the first takers died leaving children, the estate would go over to the latter in fee as purchasers, and if the former died indefinitely, without children, it would go to the surviving brothers and sisters absolutely. And the practical effect would be to reduce the first estate to an interest for life merely, notwithstanding the explicit use of technical terms conferring a fee, evidently employed with a distinct notion of their legal meaning. Clayton *v.* Lowe, 5 *Barn. & Ald.*, 636. Besides, that construction would render defeasible the original shares first taken under the will, while those which might accrue by the clause of survivorship, would vest absolutely; a consequence certainly never contemplated. Pain *v.* Benson, Atk., 80; *Ex parte*, West, 1 B. C. C., 575. Congruity, therefore, requires that the chance of survivorship among the children of the testators and the possible event upon which the limitation over to their children might take effect, should be referred to the same determinate period; or, in other words, to let in the survivors on the death of any of their brothers or sisters without issue, the contingency must happen within the same definite time when, according to the settled rules of construction, the contingency implied from the words ' in case of the death of any of my children ' must occur, to give place for the substitution of the grandchildren. Now, had the testamentary disposition ended with the gift to the children of a deceased child, no doubt could be entertained that to give it effect the death of the parent must occur before the time fixed for enjoyment, whether that be the death of the testator, or at some other given period. The cases collected by Mr. Powell, in the 27th chapter of his *Treatise on Devises*, abundantly show that where there is nothing to indicate an adverse intent, additional limitation dependant on no other contingency than is implied from the language ' if any of them die,' or ' in case of death,' cannot be referred to the event of death whenever it may happen, which would be to give a forced signification to such words, but must be construed as referring to death in association with some additional circumstance, which makes it actually contingent. That circumstance, it is said, is naturally in regard to the time of its happening, and that time,

Rickards and Wife *v.* Gray.

where the gift is immediate, is necessarily the death of the testator, there being no other period to which the death can be referred.   But, as a testator is not supposed to anticipate himself surviving the object of his bounty, this construction is only made *ex necessitate rei,* and gives way where the contingency of the death of the first beneficiaries may be referred to some other time, and which is always the case where the gift is limited at some period subsequent to the death of the testator; as, where there is a precedent particular interest carved out of the fund or estate.   2 Pow. on Dev., 758, 763.   These rules are applicable whether the corpus of the gift be personalty or realty, where the whole interest in each is given subject to be defeated by the implied contingency; although most of the cases reported present bequests of personal property, in the case before us, the children were to take all the testator's estate, real and personal, after the death of their mother, to whom an estate for life was given. Had she survived the testator, the period of the children's enjoyment would have been deferred until after her decease, and consequently the first contingency might have had place at any moment during her life; but, as the will was ambulatory, until the death of the testator, the prior death of his wife confined the contingency to the period of his life, the will being subject to the same construction it would have received had the devise of the particular estate been altogether omitted.

"I have said that to harmonize this will and give consistency to all its parts, we must refer the possible consummation of the second contingency, as creative of an estate in the survivors, to the same limit.   Such a construction is not only called for by reasons springing from this particular testamentary instrument, but is justified by authoritative precedent.   Here the ultimate gift to the survivors is made to depend upon an actual contingency.   And where, say the determinations, this is the case, and there is nothing in the will to show the contingency of dying without children was meant to operate without limit during the life of the first taker, it is, as in the other instance, restricted to the death of the testator, or within a given period after his decease.   Where the gift is immediate, the contingency is held

determined by the first-named event; where there is an intermediate estate, time may be given for the happening of the possibility during the running of the precedent interest. Examples and illustrations of this rule are afforded by Doe d. Lifford *v.* Sparrow, 13 East., 359, which was a devise of realty, and Jenour *v.* Jenour, 10 Ver., 562, and Gilbert *v.* Leonard, 1 Swanst., 161, all of which are very like the case before us. But the learned author to whom I have already referred more than once, deduces a rule from the decisions which, I think, covers and decides this controversy. Where, says he, a devise in fee is followed by several alternative limitations over, which aggregately provide for the death of the devisee under all circumstances, as where there is a devise over if he die leaving children, and another if he die without leaving children, the case then becomes analogous to that of a limitation if he die generally, and accordingly the words are held to refer to the death of the devisee in the lifetime of the testator. Indeed, he adds, to hold them to refer to death at any time would be to cut down the devisee's estate in fee simple to an estate for life. The case cited by the author in support of the rule just stated, in Clayton *et al v.* Lowe, 5 Barn. and Ald., 636, the syllabus of which he gives as follows: The testator after bequeathing a specific legacy, devised all his real and personal estate to be equally divided between his three grandchildren, share and share alike forever; and also that if either of them should happen to die without child or children lawfully begotten, then such part or share of the one so dying should be equally divided among the surviving grandchildren; but if any of his grandchildren should die, and have a child or children, such child or children should have their parent's share equally divided among them, share and share alike. It was held that upon the death of the testator, the three grandchildren all surviving him took an indefeasible estate in fee simple, as tenants in common under the devise." " It will be found in all the cases referred to that the precise point stated was agitated and much considered, and though they differ in their choice of the testator's death, or the expenditure of the particular estate (where there is one) as fixing the limit within which the de-

feasible character of a devise or bequest is to expire, they all agree in referring it to one or the other of those periods, unless some peculiar provision points to a different time." Caldwell *v.* Skilton, 1 Harris, 152.

The same rule was also recognized in the same court and is thus stated by Rogers, J.: "All the authorities concur, perhaps, without exception, that when the gift is immediate, that is in possession, it is to be treated as intended to provide for the death of the objects of the testator's bounty in the lifetime of the testator; the devise affording no other point of time to which they could be referred." Johnson *v.* Morton, 10 Barr., 250. And Chambers, J., in announcing the opinion of that court in the case of Jessup *v.* Smuck, 4 Harris, 327, which involved the same rule of testamentary construction as a question in the case, said the opinion of the court as delivered by Justice Bell in Caldwell *v.* Skilton, has our entire approbation, although in the case then before the court they considered that the context of the will, and the several legacies charged by it on the devisee of the real estate in question in favor of other children and grandchildren and limited to be paid by the devisee several years after the death of the testator, showed that the testator did not mean that the limitation over in that case on an immediate devise to him in fee simple of the premises, should only take effect in case the devisee died in his lifetime. The latest case to which we have been referred was also decided in the Supreme Court of that State during the past year, and also sustains the rule in question. It is the case of Mickley's Appeal, 9 Reporter, 658, in which Sharswood, C. J., remarks: "It is very clearly settled both in England and in this State, that if a bequest be made to a person absolute in the first instance, and it is provided that in the event of his death, or his death without issue, another legatee or legatees shall be substituted to the share or legacy thus given, it shall mean death, or death without issue before the testator's. The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life, or, what is practically the same thing, to be subjected to an executory gift, even upon the occurrence of the contingency of

death, or death without issue, at any future period within the rule against perpetuities, without clear evidence of such an intent."

The rule was also recognized and applied in the case cited of Ware v. Watson, in the court of Appeal in Chancery, England, 7 De G. M. & G., 248, in which the testator, having three sons and three daughters, gave by his will his residuary estate in trust to be divided into six shares, "being as many shares" as he had children, one share to be for the benefit of each child in manner following, viz., the share of sons to be paid to them as soon as convenient after the death of the testator, and the shares of daughters to be vested in trustees for their respective benefit as thereinafter mentioned. *Provided,* That if any son died without having issue living at his death, the share intended for such son, and any share accruing under that proviso, should accrue to the survivors of the testator's children, their executors and administrators. And he directed his daughters' shares to be invested upon trusts therein mentioned, for them and their children. By a codicil reciting that he desired to settle more distinctly the share of one of the daughters, he revoked the will as to her share, and gave it in trust for her for life, and after her death for such of her children as should attain twenty-one, or, being daughters, marry; and in case she should have no child living at her decease who should attain a vested interest, in trust for the testator's children who should be living at her decease, and the representatives of such as should be dead. One of the sons died a bachelor in the testator's lifetime, and the above-mentioned daughter died after the testator's death, unmarried. Held, 1. That the surviving sons' shares, both original and accruing, vested absolutely on the testator's death, the clause of substitution as to son's shares operating only in case of death in the lifetime of the testator. 2. That the daughters' accruing shares vested in them absolutely. It was also held by Malins, V.-C., in the case of Bowers v. Bowers, 8 Equity Cases (Law Rep.), 281, in an immediate absolute bequest to legatees, with gift over in case of death, leaving children, to such children; but not leaving children, to survivors; that the death and sur-

vivorship contemplated were death and survivorship in the lifetime of the testator, and that the gift over was merely to prevent a lapse; and he cites in support of his opinion several cases in which it had been so ruled in England, and among them the case of Ware *v.* Watson. And although his decision was afterwards reversed on appeal before Lord Chancellor Hatherley and Sir G. M. Giffard, L. J., 5 Ch. Appl. Ca. (Law. Rep.), 243, the reversal is based by both of them on the ground of the context of the will in that case, which indicated a contrary intention on the part of the testator, in their opinion. In that case the testator by his will gave his residuary real and personal estate to trustees upon trust, to collect and get in the same, "and then to divide the whole between and amongst my four children, W. Bowers, Elizabeth, now the wife of I. Haigh, and H. Bowers and R. Bowers, share and share alike, as tenants in common, and not as joint tenants, with benefit of survivorship in case any of them should die without issue;" "and had the will stopped there," the chancellor said, "I confess there would have been much to have been said in favor of the construction which the vice-chancellor has adopted, namely, that the survivorship is to be referred, according to the doctrine of Cripps *v.* Wolcott, 4 Madd., 11, to the period of distribution; that is, the gift being immediate to the death of the testator. But, even then, I do not think that the matter would be free from doubt, for a reason I shall presently state." The words of the will which we have just before quoted were immediately followed, however, with these additional words: "And in case any of my said children should die leaving any child or children, then I direct that the share, whether original or accruing, of him, her or them so dying shall go, belong to and be divided between such children in equal shares, if more than one, and if only one, then the whole to such one and only child." But referring to this clause, he added: "It appears to me impossible, without putting an extremely forced construction on these words, to say that the testator meant this property to pass absolutely to his sons on his decease. Can it be said that a testator who has so clearly and expressly specified the shares which the children

are to take, and then contemplate them as in possession of those shares, and not only of those shares, but also of shares to accrue on the death of any of them, means only to define the amount of the share which is, upon the death of the testator, to pass over to the children of a child of his, who has died in his lifetime? There have been many cases in which the court has said that to refer a clause providing for the divesting of a share to the time of the testator's own death, so as to make it merely a provision against lapse, is not a natural construction. It is not *prima facie* to be supposed that he contemplates the death of the objects of his bounty in his lifetime, but he is to be considered as contemplating their death at some later period, unless he uses language which shows that he is referring to the time of his own death." Giffard, L. J., concurred in the opinion of the Lord Chancellor on the same special ground, and from all that appears in the opinions expressed by them, had the will terminated with the clause just stated above, in which case it would not have materially varied from the words of the will now before us, I think it is but fair to infer that they would not have reversed the decision of the vice-chancellor in that case.

In the latest case cited, Resant *v.* Cox, 6 Chancery Division (Law Rep.), 604, decided in the year 1877, Malins, V.-C., states the rules of that court on the subject in the following terms : " That in all cases of vesting properties we must make it vest absolutely as early as possible ; and in all these gifts which have produced the inconsistency pointed out, when they are to be during the whole lives of the devisees, the rule is to cut them down, and to make them operate as early as possible. Therefore, in the common case of a gift to a class of persons and the survivors or survivor of them, means the survivors or survivor of them at the death of the testatrix. A gift for life with remainder to a class of persons and the survivors of them means those who survive the period of distribution on the death of the tenant for life." " Now, in this case," he further adds, " the will was ' that in case any or either of my said grandchildren should depart this life without leaving lawful issue,' then, the shares were to go over on the death of their mother, to whom the life

Rickards and Wife *v.* Gray.

estate was given.    There it is reasonable enough, because at her death you can ascertain which are then dead with and without issue; and so at that period you determine who are the objects of the testator's bounty."    And this was only a short time after his decision had been reversed, on appeal, in the case of Bowers *v.* Bowers, the last case before referred to, from which it is manifest that he did not consider the final decision in that case on the special facts and circumstances involved in it was inconsistent with the general and well-settled rules of testamentary construction so deliberately laid down by him afterwards in this case. Nor does there seem to have been any appeal taken from his decision in this latter case.

Since then, however, and since this case was argued, and as late as in the month of January last, a case has been decided in which it was held, where a testator bequeathed his residuary personalty to trustees, in trust for the children of L., to be divided equally between them, and directed that, " in case of the decease of either of them leaving a family, then such share as the parents would have taken shall be equally divided amongst the children of such deceased parents," that "decease" meant decease during the testator's life—that the children of L. who survived the testator took absolutely, and that the children of one child of L., who died between the date of the will and the death of the testator, took the share his parent would have taken if living at his death.    *In re* Hayward, Cleary *v.* Lingwood, 19 Chancery Division, 470.    " Those words," said Fry, J., in delivering his opinion, " in my judgment, point to a gift to take effect in the event of the parent's dying before the time of taking, that is to say, before the death of the testator.    Therefore, it appears to me that, if any child of Mrs. Lingwood, who could have taken if he or she had been alive at the death of the testator, died leaving children, such children would be entitled to take the share which the parent would have taken.    I come, therefore, to the conclusion that, in the first place, the nine children take absolutely as surviving the testator; and, in the second place, the children of Septimus are entitled to share with their uncles and aunts."

Rickards and Wife *v.* Gray.

I would say, with regard to the final limitation in the fourth item of the will now before us, that if both of his said daughters should leave issue to survive them, or either of them, and said issue should die leaving no issue to survive them, then, and in that case, his said real estate should go to his said brothers, and the issue of such of his brothers and sisters who were deceased, as before provided in that same item in the first limitation of his real estate over to them, that, although as I have before remarked, it is inoperative and void as being limited upon a contingency by way of executory devise too remote to sustain and support it in contemplation of law, yet, I admit, if it served to enlighten us as clearly and satisfactorily as to the testator's intention, or to remove the doubt and uncertainty in which it still leaves his intention involved after it is read, it would be our duty to give it due weight and effect in the construction of the will. Hearman *v.* Pearse, 7 Chancery Appeals (Law Rep.), 282. But I have before repeated the words and given my understanding of the meaning of the first limitation over to his brothers and the children of his deceased brothers and sisters in the fourth item, and the meaning of the second and final limitation over in it to them, so far as his intention is concerned, is substantially the same on the further contingency specified, although expressed in fewer words and with direct reference to the terms employed in the preceding clause, and if drawn out at equal length would be in *totidem verbis*, and would read as follows: "My will and desire further is, that, if both my said daughters should leave issue to survive them, or either of them, and said issue should die leaving no issue to survive them, or either of them, then, my surviving brothers (if any) and the children of my deceased brothers and sisters shall have all my said real estate, to be equally divided between my brothers who survive me and the children of my said deceased brothers and sisters, the children of a deceased brother or sister to take only a parent's share, to them their heirs and assigns forever, or, in other words, as in the above clause is more fully and in the foregoing words provided. In whatever doubt, uncertainty, improbability, or perplexity, the meaning and intention of a testator may be in-

volved in the penning of such a limitation as that, none but the draftsman of the will can be answerable for; and no court of law, I think, is warranted in attempting by conjecture or presumption merely to solve the doubt which overhangs it, or to save the limitation from the operation of the settled rule of judicial construction which applies in such cases.

I have, therefore, come to the conclusion that the daughters having survived the testator, took vested and absolute estates in fee simple in the lands and tenements respectively devised to them immediately on his decease; and that the said daughter, Ratie E., was, of course, capable of conveying an indefeasible estate in fee simple in the said lot of ground in the said articles of agreement mentioned.

*Wootten* and *Wales*, J., concurred.